UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

JOE RUIZ,

        Plaintiff,                CIVIL NO. 13-2634(NLH)(JS)

   v.

CAMPBELL SOUP COMPANY, and        OPINION
CAMPBELL SOUP COMPANY
SEVERANCE PAY PLAN FOR
SALARIED EMPLOYEES

        Defendants.

**APPEARANCES:**

MARC A. WEINBERG
SAFFERN & WEINBERG
815 GREENWOOD AVE.
SUITE 22
JENKINTOWN, PA 19046

   On behalf of plaintiff

ALISON CHRISTINA MORRIS
JONATHAN D. WETCHLER (pro hac vice)
DUANE MORRIS LLP
30 SOUTH 17th STREET
PHILADELPHIA, PA 19103

   On behalf of defendants

**HILLMAN**, District Judge

    Presently before the Court is the motion of defendants for summary judgment, previously a motion to dismiss converted to a summary judgment motion by the Court in a prior Opinion, on plaintiff's ERISA violation claims against it. Defendants contend that plaintiff's ERISA claims must be dismissed for

failure to exhaust his administrative remedies.  For the reasons expressed below, defendants' motion will be denied.

I.   **BACKGROUND**

According to his complaint, plaintiff, Joe Ruiz, began working for defendant Campbell Soup Company in October 1984. Plaintiff became eligible for severance benefits under the Campbell Soup Company Severance Pay Plan for Salaried Employees (the "Plan") in the event he was discharged.  On March 22, 2011, plaintiff was terminated.  Plaintiff claims that although he was eligible for benefits, he was denied severance benefits.

Plaintiff claims that defendants violated the Employee Retirement Income Security Act (ERISA) by wrongfully excluding him from the Plan, by violating their fiduciary duties, and by unlawfully interfering with his ability to receive ERISA benefits.  Plaintiff also claims, conditionally, for retroactive benefits under ERISA.  Defendants argue that because plaintiff failed to appeal the denial of his benefits in the time provided under the Plan, his claims are barred for his failure to first exhaust his administrative remedies.  Plaintiff has opposed defendants' motion, arguing that he did properly comply with the administrative procedures for submitting his claim and appealing the denial of his claim.  Plaintiff also argues that some discovery must be conducted in order for him to support his contention that if it is determined that he did not technically

comply with the administrative procedures, it would nonetheless have been futile to do so because of defendants' routine practice of denying severance benefits to entitled participants.

## II. JURISDICTION

This Court has federal question jurisdiction over this matter pursuant to Sections 404, 405, 502(a) and 510 of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1104, 1105, 1132(a), and 1140.

## III. DISCUSSION

### A. Standard for Summary Judgment

Summary judgment is appropriate where the Court is satisfied that the materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, or interrogatory answers, demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Fed. R. Civ. P. 56(a).

An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. Id. In considering a motion for summary

judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor." Marino v. Industrial Crating Co., 358 F.3d 241, 247 (3d Cir. 2004)(quoting Anderson, 477 U.S. at 255).   Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial.  Id.  Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party.  Anderson, 477 U.S. at 256-57.  A party opposing summary judgment must do more than just rest upon mere allegations, general denials, or vague statements.  Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001).

    B.    **Exhaustion of Administrative Remedies**

"ERISA itself does not contain an exhaustion requirement, but it does require covered benefit plans to provide administrative remedies for persons whose claims for benefits have been denied." Karpiel v. Ogg, Cordes, Murphy & Ignelzi,

LLP, 297 Fed. App'x 192, 193 (3d Cir. 2008) (citing 29 U.S.C. § 1133; Metropolitan Life Ins. Co. v. Price, 501 F.3d 271, 279 (3d Cir. 2007). "Accordingly, courts have long held that an ERISA plan participant must exhaust the administrative remedies available under the plan before seeking relief in federal court unless the participant can demonstrate that resort to the plan remedies would be futile." Id. (citing Harrow v. Prudential Ins. Co. of Am., 279 F.3d 244, 249-51 (3d Cir. 2002); Weldon v. Kraft, 896 F.2d 793, 800 (3d Cir. 1990)). Exhaustion is a non-jurisdictional affirmative defense. Metropolitan Life Ins. Co. v. Price, 501 F.3d 271, 279 (3d Cir. 2007). Therefore, defendants must demonstrate the plaintiff failed to exhaust his administrative remedies.

**C.   Analysis**

Defendants argue that all or part (Counts I, II and IV) of plaintiff's complaint should be dismissed because he failed to exhaust in a timely manner his administrative remedies when he failed to file an appeal of denial of benefits within 60 days of receipt of the denial pursuant to Section 9.2(c) of the Plan. From the materials provided as part of the parties' briefing, a timeline of correspondence between the parties is as follows:

- March 22, 2011 - Plaintiff was terminated

5

- April 5, 2011 – Plaintiff writes a letter to Tim Hassett and Rebecca Bagin, classified as "management" for Campbell, with copies purportedly sent to "Bob Morrissey," Campbell's Vice President – Human Resources North America, and Nancy Reardon.[1]  Plaintiff states that he is "writing to you both asking for consideration for my severance after 26 years and 7 months of employment with Campbell Soup Company," and "I am hoping that you will reconsider my severance in an effort to help my family and me to move on."[2]

- April 27, 2011 - Donald B. Shanin, Vice President – Corporate Compliance and Deputy General Counsel for Campbell Soup Company, writes an email to plaintiff, stating that he is "writing in response to your e-mail to Tim and Rebecca," and asking plaintiff to call him in the

---

[1] The record does not indicate what position Nancy Reardon holds at Campbell.

[2] Defendants challenge plaintiff's proffer of the email chain between Campbell employees and plaintiff because it was submitted without an affidavit by plaintiff verifying its veracity.  Plaintiff attempts to cure this procedural defect in a sur-reply, and the Court notes that defendants do not challenge the authenticity of the email communication between plaintiff and the Campbell employees.  Regardless of this procedural misstep, the Court includes the email chain in the chronology of events in this case in order to provide the proper context of all the communications between plaintiff and defendants and in view of all the likely admissible evidence.

office. The subject line of the email is "Severance Consideration."

- May 4, 2011 – Plaintiff sends an email to Shanin in the "Severance Consideration" email chain, stating that it has been a week since they spoke on the phone, and he "just wanted to see if you had a chance to meet with the team."

- May 5, 2011 – Shanin replies to plaintiff's May 4, 2011 email in the same email chain:

    Thanks for your patience.

    As we discussed, your termination does not qualify you for severance pay under the terms of Campbell's Severance Pay Plan for Salaried Employees which, by its terms, limits eligibility to terminations resulting from "economic or organizational changes resulting in job elimination or consolidation" or a "reduction in force."

    Nevertheless, despite the underlying reasons for your termination, we decided to offer you a lump sum separation payment, taking your long tenure with the Company into account, in order to assist in your transition to your next employment opportunity. As I told you, out of respect, I did not start off low in order to make you negotiate up to an agreeable amount. Instead, from the start, I offered you the total amount that we were willing to pay. Frankly, this amount (6 months of pay equivalent to between $80,000 and $90,000) exceeds any amount, outside of severance, that we have paid to a departing employee in my years with the Company. We are not willing to increase this offer and hope that you give it serious consideration.

- May 17, 2011 – Shanin sends plaintiff an email with the subject line "Proposal Deadline." Shanin writes, "Just a

7

quick follow-up since I have not heard from you since my May 5 e-mail. Our offer stands as stated and will remain until May 23, 2011. If I have not heard from you by that date, the offer will be rescinded. It remains my hope that we can resolve this matter amicably, respectfully and confidentially."

- August 24, 2011 – Letter from Shanin to plaintiff's counsel:

    > As we discussed last week, since Mr. Ruiz is contesting his entitlement to benefits under the Campbell Soup Company Severance Pay Policy for Salaried Employees (the "Plan"), a written claim for benefits must be filed with the Plan Administrator setting forth the details of the claim. For everyone's convenience, I will accept the claim on behalf of the Plan Administrator or her delegate. As I believe you indicated that you have a copy of the governing Plan document, I have enclosed for your information a copy of the Summary Plan Description for the Plan.

- September 22, 2011 – Letter from plaintiff's counsel to Shanin, stating, in relevant part, "Please accept this correspondence as a formal request for all relevant severance benefits which were made due and payable to plan participant, Joseph Ruiz. This correspondence should be construed as a formal written notification as outlined in the Campbell Soup Summary Plan Description. Specifically, Mr. Ruiz is seeking all relevant severance benefits for

which remains due based upon his 26.5 years of service." Counsel's letter also details the reasons he feels that plaintiff is entitled to severance benefits under the Plan.

- October 11, 2011 – Letter from Robert Morrissey, Campbell's Vice President – Human Resources North America, to plaintiff's counsel:

    I am writing in response to the severance claim for benefits that you have made on behalf of your client, Joseph Ruiz. Section 3.1(a) of the Campbell Soup Company Severance Pay Plan for Salaried Employees (the "Severance Plan") provides that a salaried employee whose separation from employment by Campbell is due to one of the following events shall be eligible for severance pay: (1) economic or organizational changes resulting in job elimination or consolidation or (2) reduction in work force. Since Mr. Ruiz's separation from employment was not due to either of the aforementioned events, he is not eligible for severance under the terms of the Severance Plan. Enclosed for your reference is a copy of the Severance Plan document, as well as a summary plan description of the Severance Plan, which includes a statement of rights under the Employee Retirement Income Security Act of 1974, as amended.

    If Mr. Ruiz chooses to pursue an appeal of this decision, please refer to the section of the summary plan description entitled "Plan Administration and Claims Procedures" and send a written appeal to the Plan Administrator. Donald B. Shanin, Campbell's Vice President - Corporate Compliance and Deputy General Counsel, will accept the appeal on behalf of the Plan Administrator. The appeal must include the specific reasons that Mr. Ruiz believes his termination from employment is eligible for severance under the Severance Plan and provide evidence, if any, supporting such reasons, so that the Plan Administrator can undertake a full review of the

matter.

- December 22, 2011 – Letter from plaintiff's counsel to Shanin:

    As you are aware, I have been retained to represent the interests of Joseph Ruiz with regard to an ongoing claim for severance benefits . . . Mr. Ruiz has rejected your initial offer to resolve this matter and has sought to appropriately appeal the denial of benefits through the Campbell Soup Health and Welfare Plan administration process.

    Currently, we are seeking status on Mr. Ruiz's appeal of the denial of the above-referenced claims and wish to formally exhaust all administrative remedies prior to the initiation of any lawsuit (if necessary). Mr. Ruiz is anxious to move this process forward and, therefore, requests all necessary information from you as to the next step associated with this appeal. Would you please be so kind as to contact me directly to discuss when we may expect a formal response from the benefit committee with regard to these claims. I look forward to hearing from you in the near future.

- February 8, 2012 – Letter from Shanin to plaintiff's counsel in response to counsel's December 22, 2011 letter. Shanin writes, "The fact of the matter is that there is no current pending appeal related to Mr. Riuz's severance claim. On October 11, 2011, Robert Morrissey, Campbell's Vice President – Human Resources, North America wrote to you (copy enclosed) denying Mr. Ruiz's claim for severance benefits. In his letter, Mr. Morrissey included copies of the Severance Plan and the Summary Plan Description and

10

directed your attention to the claims and appeals procedure.  Since that date, we have received no appeal and no supporting rationale and documents."

- February 28, 2012 – Letter from plaintiff's counsel to Shanin, wherein plaintiff's counsel writes, "You reference that there is no current pending appeal related to Mr. Ruiz' [sic] severance claim.  To the contrary, on September 22, 2011, I wrote to you and advised that my letter constituted "formal written notification" as outlined in the Campbell Soup Summary Plan Description.  My September 22, 2011 letter (copy enclosed), contained details of Mr. Ruiz' [sic] claim as well as the rationale for same.  Moreover, my September 22, 2011 letter was issued in response to your correspondence of August 24, 2011 which directed claimant to file in accordance with Campbell Soup Summary Plan Description."

- March 22, 2012 – Letter from Shanin to plaintiff's counsel:

    Please be advised that we are treating your February 28, 2012 letter as an appeal of the October 11, 2011 denial by Robert Morrissey, Campbell's Vice President -Human Resources, North America, of Mr. Ruiz's claim for severance benefits.

    Pursuant to Article IX of the Campbell Soup Company Severance Pay Plan for Salaried Employees ("the Plan"), the Plan Administrator or her delegate will decide the appeal and provide you a written decision

11

      within the time limits set forth in Section 9.2(d) of the Plan.

- March April 25, 2012, from Robert J. Centonze, Vice President – Global Compensation & Benefits for Campbell Soup Company, to plaintiff's counsel.  Centonze notes that Section 9.2 of the Plan outlines the procedure for a review of a denial of a severance benefits claim, and provides,

   > Upon denial of a claim, in whole or in part, a claimant or his duly authorized representative will have the right to submit a written request to the Plan Administrator for a full and fair review of the denied claim by filing a written notice of appeal with the Plan Administrator within 60 days of the receipt by the claimant of written notice of the denial of the claim.  If the claimant fails to file a request for review within 60 days of the denial notification, the claim will be deemed abandoned and the claimant precluded from reasserting it.

   Centonze states that despite the specific instructions from Morrissey to plaintiff's counsel in the October 11, 2011 letter regarding the appeals process, plaintiff's counsel did not respond for more than 60 days.  Centonze continues,

   > In accordance with Section 9.2(c) of the Plan, a request for a full and fair review of the denied claim should have been provided to the Plan Administrator by the second week in December 2011 – within 60 days of the receipt by the claimant of written notice of the denial of the claim.  As your appeal was not made until December 22, 2011, at the earliest, or more likely February 28, 2012, it was untimely.  The specific language in Section 9.2(c) ("If the claimant fails to file a request for review within 60 days of

12

> the denial notification, the claim will be deemed abandoned and the claimant precluded from reasserting it.") governs.
>
> Second, and independently, even if the appeal was deemed timely, I find that it is without merit. Section 3.1(a) of the Plan provides that a salaried employee whose separation from employment by Campbell is due to one of the following events shall be eligible for severance pay: (1) economic or organizational changes resulting in job elimination or consolidation or (2) reduction in work force. . . . My review of Mr. Ruiz's separation from employment confirmed that his termination was not due to either of the aforementioned events.

Mr. Centonze concludes,

> You have completed the administrative appeal process authorized by the Plan. If you disagree with my determination of your appeal, you have the right to file an action in the United States District Court challenging this determination.

Defendants argue that plaintiff's claims are barred because a plan beneficiary's failure to timely appeal at the plan level constitutes a failure to exhaust his administrative remedies, which compels the dismissal of his complaint filed in federal court. (Def. Br., Docket No. 16 at 14, citing <u>Conrad v. Wachovia Group Long Term Disability Plan</u>, 2010 WL 3810198 (D.N.J. 2010) and other cases).

The Court does not dispute the general rule that a beneficiary who does not fully and timely engage in the administrative review process provided by an employee benefits

plan may be barred from bringing suit in federal court.  The requirement of exhausting plan remedies "helps to reduce the number of frivolous lawsuits under ERISA; to promote the consistent treatment of claims for benefits; to provide a nonadversarial method of claim settlement; and to minimize the costs of claims settlement for all concerned."  Metropolitan Life Ins. Co. v. Price, 501 F.3d 271, 278-79 (3d Cir. 2007) (citing Harrow v. Prudential Ins. Co. of Am., 279 F.3d 244, 249 (3d Cir. 2002)) (other citations and quotations omitted).  Additionally, "exhaustion enhances the ability of fiduciaries to expertly and efficiently manage their funds by preventing premature judicial intervention in their decision-making processes."  Id.

As the Third Circuit observed, however, "as important as the exhaustion rule may be, ERISA nowhere mentions the exhaustion doctrine."  Id.  The "judicially-crafted doctrine [of] exhaustion places no limits on a court's adjudicatory power," and "[u]nlike a rigid jurisdictional rule, prudential exhaustion provides flexible exceptions for waiver, estoppel, tolling or futility."  Id. (citations omitted) (explaining that "ERISA's exhaustion requirement bears all the hallmarks of a nonjurisdictional prudential rule," and that in "addition to

14

being judge-made, the doctrine's futility exception involves a discretionary balancing of interests[;] [j]udicial prudence, not power, governs its application in a given case").

In this case, plaintiff has satisfied the purposes of the exhaustion doctrine in ERISA cases.  Even though it is evident that plaintiff did not submit a formal appeal within 60 days (by December 10, 2011) of the denial of benefits as directed by Robert Morrissey in his October 11, 2011 initial denial letter, defendants chose to construe plaintiff's counsel's February 28, 2012 letter as his appeal.  The appeal was denied as untimely, but it was also substantively denied because the Plan found that plaintiff's termination did not qualify for severance under the terms of the Plan, which was the same basis for denying plaintiff's original claim for severance benefits.  Presumably, if plaintiff had properly filed his appeal by December 10, 2011, the Plan would have upheld the denial of benefits for the same reason – i.e., plaintiff's separation from employment was not due to economic or organizational changes resulting in job elimination or consolidation, or a reduction in work force.

The Plan provides that the review of the denial of benefits "will take into account all information submitted by you relating to the claim, without regard to whether such

15

information was submitted or considered in the initial benefits determination."[3] (Summary Plan Description, Docket No. 16-2 at 29.) It could be argued that if plaintiff followed the rules of the Plan and properly and timely provided the specific reasons and evidence to support plaintiff's contention that his termination from employment was eligible for severance under the Plan, the Plan Administrator could have undertaken a full review of the matter on appeal rather than relying on the prior record. Plaintiff's counsel's February 28, 2012 letter, which the Plan construed as plaintiff's appeal, makes clear, however, that plaintiff's appeal intended to rely on the same reasons as those proffered to support his original claim as set forth in counsel's September 22, 2011 letter to Shanin. Thus, when the Plan considered plaintiff's appeal, aside from its untimeliness, plaintiff substantively satisfied the Plan's requirements for filing an appeal. (See the Plan at 9.2, Docket No. 16-2 at 15.) Moreover, when the Plan issued its decision on plaintiff's appeal, it followed the Plan's requirement that the Plan

---

[3] It is important to note that the Summary Plan Description instructs a beneficiary, "If you do not raise issues or present evidence on review, you will preclude those issues or evidence from being presented in any subsequent proceeding or judicial review of your claim." (Summary Plan Description, Docket No. 16-2 at 29.)

Administrator issue a four-part decision detailing the specific reasons for the adverse determination, the specific provisions in the Plan upon which the decision is based, that the claimant is entitled to records and information relevant to the decision, and a statement of the claimant's right to bring an action under ERISA in federal court.  (Id.)

   The circumstances of plaintiff's claim for severance benefits under the Plan can be succinctly summed up as follows: Ten days after the 60-day appeal period expired, plaintiff's counsel contacted defendants to seek the status of the appeal of the denial of plaintiff's claim for severance benefits under the Plan.  Even though he did not technically comply with the Plan-mandated deadline, the Plan nonetheless deemed plaintiff's counsel's letters to constitute an appeal, considered all of plaintiff's previous submissions to the Plan in support of his claim, and determined that he did not meet the requirements to obtain severance benefits under the Plan.  Plaintiff was also instructed that he had "completed the administrative appeal process authorized by the Plan," and that if he disagreed with the Plan Administrator's determination of his appeal, plaintiff had the right to file an action in the United States District Court challenging this determination.

17

Under these circumstances, the dismissal of plaintiff's ERISA claims based on his untimely appeal would not satisfy the purposes of the exhaustion doctrine. Furthermore, the dismissal of plaintiff's ERISA claims would simply not be fair, especially considering that the exhaustion requirement is a judicially crafted doctrine, and that the Plan itself considered the administrative procedures completed and directed plaintiff to the federal court as his next step.[4] Therefore, defendants' argument that plaintiff is barred from bringing such claims because he did not exhaust his administrative remedies[5] is

---

[4] The Court's decision in this case is not intended to discourage ERISA benefits plan administrators from considering the merit of untimely appeals of decisions to deny benefits claims. Because the exhaustion doctrine is a nonjurisdictional prudential rule, there may be circumstances where the denial of an appeal based on non-compliance with the plan-mandated timetable could be sufficient to satisfy the exhaustion requirement and permit a beneficiary to file a challenge to the denial of benefits in federal court. In other words, the Court's decision in this case may have been the same if the Plan had just denied plaintiff's appeal as untimely, without considering its substance.

[5] The Court does not need to address plaintiff's argument in his opposition that discovery must be undertaken prior to the resolution of defendants' instant motion for summary judgment in order for him to gather evidence to demonstrate that exhaustion should be excused on futility grounds because defendants had a fixed policy of denying benefits regardless of whether a claimant properly pursued the administrative process provided by the Plan. See Harrow v. Prudential Ins. Co. of America, 279 F.3d 244, 250 (3d Cir. 2002) (explaining that whether to excuse exhaustion on futility grounds rests upon weighing several

unavailing.  Whether defendants move for summary judgment on other bases is left to their determination.

## **CONCLUSION**

For the foregoing reasons, defendants' motion for summary judgment must be denied.  An appropriate Order will be entered.


Date: _December 4, 2014_         ___s/ Noel L. Hillman_____
At Camden, New Jersey           NOEL L. HILLMAN, U.S.D.J.

---

factors, including: (1) whether plaintiff diligently pursued administrative relief; (2) whether plaintiff acted reasonably in seeking immediate judicial review under the circumstances; (3) existence of a fixed policy denying benefits; (4) failure of the insurance company to comply with its own internal administrative procedures; and (5) testimony of plan administrators that any administrative appeal was futile).

19